UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NATIONAL TRUST INSURANCE
COMPANY,                                                          Plaintiff,

v.                                               Civil Action No. 3:14-cv-394-DJH-CHL

HEAVEN HILL DISTILLERIES, INC.,                                  Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff National Trust Insurance Company filed this action seeking a declaratory judgment that it has no duty to defend or indemnify Defendant Heaven Hill Distilleries pursuant to six insurance policies National Trust sold to Heaven Hill between 2011 and 2014. The dispute arises from a lawsuit filed in Canadian Federal Court in which Diageo Canada, Inc. alleged that Heaven Hill infringed its registered trademarks. In an opinion issued on June 12, 2017, the Canadian court held that Heaven Hill infringed Diageo's trademarks. The court found, however, that Heaven Hill did not knowingly do so.

Before the Court are three motions: National Trust's motion for clarification of this Court's April 28, 2015 Order (Docket No. 41), Heaven Hill's motion for partial summary judgment (D.N. 44), and Starr Indemnity & Liability Company's motion to intervene as a plaintiff in this action (D.N. 61). National Trust's and Heaven Hill's motions raise two issues: (i) whether the Canadian court's determination that Heaven Hill did not knowingly infringe Diageo's trademarks binds National Trust and (ii) whether National Trust may seek reimbursement of the costs it incurred defending Heaven Hill in the Canadian litigation. For the reasons set forth below, the Court will grant in part and deny in part National Trust's motion, grant in part and deny in part Heaven Hill's motion, and grant Starr's motion.

# I. Background

Between 2011 and 2014, National Trust issued six insurance policies to Heaven Hill, each containing commercial liability insurance provisions. (D.N. 1, PageID # 3) The six policies consist of four identical general-liability policies and two identical umbrella-coverage policies. (*Id.*) Under the terms of the policies, National Trust agreed to pay sums that Heaven Hill becomes legally obligated to pay because of "personal and advertising injury," which the policies define to include liability stemming from trade-dress infringement. (D.N. 1-2, PageID # 109, 117) National Trust also assumed the duty to defend Heaven Hill in any suit in which it was alleged that Heaven Hill was liable for damages caused by a "personal or advertising injury." (*Id.*, PageID # 109)

Starr issued excess insurance policies to Heaven Hill in 2013 and 2014. (D.N. 61, PageID # 853) The terms of Starr's excess policies follow the "terms, definitions, conditions, and exclusions" of the National Trust general-liability policies and apply only when Heaven Hill's underlying insurance with National Trust has been exhausted. (*Id.*, PageID # 853–54)

On March 26, 2014, Diageo filed suit against Heaven Hill in Canadian Federal Court, asserting that Heaven Hill had infringed its Canadian trademark registrations based on alleged similarities in the bottling and labeling of Heaven Hill's "Admiral Nelson's" rum and Diageo's "Captain Morgan" line of spirits. (D.N. 1, PageID # 3) Among other allegations, Diageo accused Heaven Hill of willfully and knowingly infringing its trademarks. (D.N. 44-1, PageID # 664)

Heaven Hill promptly notified National Trust of the Canadian litigation and requested that it defend and indemnify Heaven Hill in accordance with the insurance policies. (*Id.*) On April 3, 2014, National Trust conditionally acknowledged and responded to its duty to provide

Heaven Hill with a defense, subject to a reservation of rights. (*See* D.N. 44-2) Thereafter, National Trust took control of Heaven Hill's defense and imposed its choice of defense counsel in the Canadian litigation. (D.N. 44-1, PageID # 664–65)

National Trust filed this action on May 29, 2014, seeking a declaration from this Court that it has no duty under the terms of the insurance policies to defend or indemnify Heaven Hill in the Canadian litigation. (D.N. 1, Page ID # 3, 17) National Trust alleges that coverage for the Canadian litigation is barred by a number of different provisions of the insurance policies. One of those provisions is an exclusion that bars coverage for any conduct that constitutes a knowing violation of the rights of another. (*See* D.N. 1-2, PageID # 109) National Trust seeks to litigate whether this "knowledge exclusion" applies, thereby relieving National Trust of its duty to indemnify or defend Heaven Hill. (D.N. 1, PageID # 5) Heaven Hill responded to this accusation with a counterclaim seeking a declaratory judgment that National Trust is contractually obligated to defend Heaven Hill in the Canadian litigation and pay any damages for which Heaven Hill may be found liable. (D.N. 9)

In October 2014, Heaven Hill moved to stay discovery as to whether it knowingly infringed Diageo's trademarks, arguing that a continuation of discovery would present an irreconcilable conflict of interest. (D.N. 16, PageID # 279) In a Memorandum Opinion and Order entered April 28, 2015, the Court agreed, reasoning that "[a]llowing National Trust to attempt to discover and show in this case that Heaven Hill knowingly or intentionally violated Diageo's legal rights while maintaining an obligation to defend Heaven Hill in the Canadian Litigation is problematic and presents a potential conflict of interest." (D.N. 29, PageID # 434) Thereafter, National Trust requested reconsideration of the partial stay. (D.N. 32) The Court denied the motion in an order entered January 11, 2016. (D.N. 37)

National Trust now moves for clarification of the Court's April 28, 2015 Order. (D.N. 41) Specifically, National Trust seeks clarification that (i) any determination in the Canadian litigation regarding Heaven Hill's knowledge or intent will not bar National Trust from seeking an independent determination of the issue in this action and (ii) National Trust will be allowed to seek reimbursement of attorney fees and costs in the event that this Court determines that Heaven Hill was not entitled to a defense in the Canadian litigation under the terms of the policies. (*Id.*) Heaven Hill moves for partial summary judgment as to each issue raised in National Trust's motion. (D.N. 44) Specifically, Heaven Hill argues that if the Canadian court finds that it did not knowingly infringe Diageo's trademarks, National Trust is barred from litigating the knowledge issue. (D.N. 44-1, PageID # 668) Heaven Hill also argues that National Trust is not entitled to recoup costs incurred defending Heaven Hill in the Canadian litigation, even if this Court determines that National Trust had no duty to defend. (*Id.*, PageID # 685) As of the filing of Heaven Hill's motion for partial summary judgment, no discovery had been taken by either party. (*See id.*, PageID # 657)

On June 12, 2017, while these motions were pending, the Canadian Federal Court issued its decision in the underlying lawsuit, concluding that Heaven Hill had infringed Diageo's trademarks. *See Diageo Canada Inc. v. Heaven Hill Distilleries, Inc.*, 2017 F.C. 571 (Can. Ont.). The Canadian court also found that there was insufficient evidence to conclude that Heaven Hill acted knowingly in so infringing. *Id.* at ¶ 84.

Meanwhile, Starr Indemnity filed a motion to intervene in the present lawsuit. (D.N. 61) Starr argues that it has a substantial legal interest in this action, as it shares in common most of the coverage defenses raised by National Trust. Accordingly, Starr seeks to intervene pursuant to Federal Rule of Civil Procedure 24(a) and 24(b). (*See id.*)

## II. Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment." *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008).

## III. Whether National Trust May Litigate the Knowledge Issue

In its motion for clarification, National Trust argues that the Canadian court's determination regarding Heaven Hill's knowledge should not bar it from litigating that issue in the present action. (D.N. 41) Heaven Hill seeks summary judgment on the same question, arguing that National Trust is so barred. (D.N. 44) The initial difficulty in resolving this dispute results from the parties' reliance on two distinct areas of law in support of their positions. National Trust supports its argument by citing an exception to the doctrine of collateral estoppel. (D.N. 41-1, PageID # 629–43) Relying on contract principles, Heaven Hill argues that regardless of any preclusive effect, National Trust is barred from litigating the knowledge issue under the express terms of the policies. (D.N. 44-1, PageID # 668–85) The Court concludes that National Trust's position is correct and that National Trust is therefore not barred from litigating the knowledge issue.

**a. The Express Terms of the Policies**

Heaven Hill argues that "[u]nder the express terms of the Policies, National Trust's duty to indemnify Heaven Hill is determined solely by the nature of the underlying judgment." (D.N. 44-1, PageID # 659) Because this is a diversity action, Kentucky law governs issues of contract interpretation. *Erie v. Tompkins*, 304 U.S. 64 (1938); *see also Associated Indus. of Ky., Inc. v. U.S. Liab. Ins. Grp.*, 531 F.3d 462, 465 (6th Cir. 2008) (applying Kentucky law in a diversity action concerning the interpretation of an insurance contract).

In relevant part, the policies state that National Trust "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' *to which this insurance applies*." (D.N. 1-2, PageID # 109 (emphasis added))[1] The policies further provide that "'[p]ersonal and advertising injury' means injury . . . arising out of . . . [i]nfringing upon another's copyright, trade dress or slogan in [Heaven Hill's] advertisement." (*Id.*, PageID # 117) The policies also state that "[the] insurance does not apply to . . . '[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (*Id.*, PageID # 109)

Heaven Hill argues that based on the provisions cited above, "National Trust's duty to indemnify Heaven Hill is triggered and becomes fixed when Heaven Hill becomes 'legally obligated to pay damages' on account of conduct that constitutes a 'personal and advertising injury' that is covered by the Policies." (D.N. 44-1, PageID # 659) In other words, Heaven Hill claims that upon a determination by the Canadian court that Heaven Hill did not act knowingly,

---

[1] Because the relevant language in the general-liability policies is essentially mirrored in the umbrella policies, the Court exclusively cites the former. (*See* D.N. 1-1; D.N. 1-2)

Heaven Hill became liable for a "personal and advertising injury" (i.e., a judgment against Heaven Hill for *negligent* infringement of trade dress) that falls within the policies' coverage.

This is a strained reading of the policies' terms, however. Under Heaven Hill's reading, the exclusionary phrase "to which this insurance applies" is linked to any underlying judgment against Heaven Hill. But "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *See Lockhart v. United States*, 136 S. Ct. 958, 963 (2016) (citing *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). Thus, the exclusionary phrase "to which this insurance applies" modifies the phrase "personal and advertising injury," which exclusively refers to Heaven Hill's conduct (i.e., type of damage) rather than any underlying judgment. Indeed, the policies define "personal and advertising injury" to include "*injury* . . . arising out of . . . infringing upon another's . . . trade dress." (D.N. 1-2, PageID # 117 (emphasis added)) The exclusionary phrase is therefore linked to the underlying conduct or type of damage giving rise to the judgment, rather than the judgment itself.

This interpretation is in line with how courts have interpreted similar exclusionary phrases. The Kentucky Supreme Court has noted that "[t]he qualifying phrase, 'to which this insurance applies' underscores the basic notion that the premium paid by the insured does not buy coverage for all property damage but only *for that type of damage* provided for in the policy." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 876 (Ky. 2002) (emphasis added)); *see also City of Sandusky, Ohio v. Coregis Ins. Co.*, 192 F. App'x 355, 360 (6th Cir. 2006) (finding that under principles of Ohio contract interpretation, the phrase "to which this insurance applies" "does not include sums payable only because of the success of claims that were plainly not otherwise covered by the insurance policy"); *Mid–Continent Cas. Co. v. Petroleum Sols.*, Inc., No. CV 4:09-0422, 2016 WL 5539895, at *23 (S.D. Tex. Sept. 29,

2016) (finding that the phrase "property damage to which this insurance applies" referred not to whether liability was found in the underlying judgment but whether the damage was caused by an occurrence in the coverage territory).

Accordingly, there must be a determination of whether Heaven Hill's conduct falls within the policies' coverage. The question here is whether a finding in underlying litigation that bears on this determination binds the insurer in subsequent proceedings. When presented with policy language similar to the language at issue here, courts have consistently determined the preclusive effect of findings made in underlying litigation using principles of collateral estoppel rather than contract interpretation. *See, e.g.*, *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 910 (8th Cir. 2007) (analyzing the preclusive effects of an underlying criminal action in determining whether the "criminal act exclusion" of an insurance policy was triggered); *Berry Plastics Corp. v. Ill. Nat'l Ins. Co.*, 244 F. Supp. 3d 839 (S.D. Ind. 2017) (analyzing the preclusive effect of a jury finding regarding damages in an underlying action to determine whether the insurer could challenge whether the damages were covered "property damages"); *Eckstein v. Cincinnati Ins. Co.*, 469 F. Supp. 2d 444 (W.D. Ky. 2007) (addressing whether collateral estoppel barred an insurer from litigating certain issues in light of findings made in an underlying action); *Nationwide Mut. Fire. Ins. Co. v. Stanley*, 403 F. Supp. 2d 638, 644 (E.D. Tenn. 2005) (analyzing the preclusive effects on an underlying criminal action in determining whether the "intent exclusion" of an insurance policy was triggered).

Arguing against this line of cases, Heaven Hill devotes significant attention to the Oregon Supreme Court's recent opinion in *FountainCourt Homeowners' Ass'n v. FountainCourt Development, LLC*, 380 P.3d 916 (Or. 2016). At issue in *FountainCourt* was an insurance provision stating that "[the insurer] will pay those sums that the insured becomes legally

obligated to pay as damages because of . . . 'property damage' *to which this insurance applies*." *Id*. at 925 (emphasis added). The court held that the insurer was not "entitled to second-guess or retry the nature of [the insured's] liability" (i.e., a previous court's determination that property damage had occurred). *Id*. This holding was not based on collateral estoppel, but rather on the court's concern that such second-guessing would require "the court to evaluate—as a matter of contract law—what, precisely, the insured has become legally obligated to pay as damages in the prior proceeding, in order to determine whether the policy covers those damages." *Id*. Because the court in the underlying litigation concluded that property damage had occurred, the Oregon Supreme Court found that the insurer was barred from litigating the issue.

The *FountainCourt* decision is unpersuasive. *FountainCourt*'s significance is diminished by the fact that in reaching its conclusion, the court cited no caselaw in support of its holding. As the highest court in Oregon, it was of course not required to do so in order to bind Oregon courts.[2] But the lack of authority decreases its value, particularly since the Court is not aware of any other courts that have adopted *FountainCourt*'s reasoning. Indeed, as discussed above, numerous courts have reached the opposite conclusion.

Regardless of how persuasive it may be, *FountainCourt* is also distinguishable from this case. The Oregon Supreme Court summarized its position by noting: "In other words, an insurer cannot, in a subsequent proceeding, retry its insured's liability, or alter the nature of the damages awarded in that proceeding." 380 P.3d at 925. Here, National Trust does not contest whether Heaven Hill is liable to Diageo (i.e., whether Heaven Hill engaged in any sort of infringement).

---

[2] The Court notes that notwithstanding *FountainCourt*, the Oregon Court of Appeals recently stated that "[r]egardless of the legal mechanism used to resolve an insurance-coverage dispute, an insurer is not bound to pay a judgment entered against its insured unless it has had an opportunity to litigate—*on its own behalf*—the existence and extent of its duty to indemnify its insured." *Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 395 P.3d 892, 909 (2017) (emphasis added)).

Nor would it even be possible for National Trust to contest the nature of damages awarded, as the Canadian court has yet to rule on damages. Rather, National Trust contests whether the knowledge exclusion bars coverage for Heaven Hill's liability to Diageo.

Ultimately, whether the Canadian court's determination regarding Heaven Hill's knowledge binds National Trust cannot be determined solely by the policies' language. The policies do not explicitly or implicitly state that National Trust's duty to indemnify is determined by the findings made in an underlying judgment. But the policies provide that National Trust must indemnify Heaven Hill for damages arising from certain conduct on Heaven Hill's part. The relevant question, then, is whether this Court may make an independent determination regarding Heaven Hill's conduct in light of a Canadian court's finding on the same issue. This is not a question of contract interpretation but one of collateral estoppel. *See Berry Plastics Corp.*, 244 F. Supp. 3d 839.

**b. Collateral Estoppel**

In its motion for clarification, National Trust seeks explanation from this Court as to whether the Canadian litigation bars it from obtaining an independent determination of the applicability of the knowledge exclusion. (D.N. 41-1, PageID # 629)

A federal court sitting in diversity applies the law of the state in which it sits to determine the preclusive effect of a foreign judgment. *See Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, No. 3:07–CV–238–H, 2009 WL 804938, at *3 (W.D. Ky. Mar. 25, 2009) (citing *Taveras v. Taveraz,* 477 F.3d 767, 783 (6th Cir. 2007)). Under Kentucky law, the doctrines of claim preclusion and issue preclusion apply to judgments rendered in foreign countries. *See id*. at *4 (citing *Kerr v. Condy*, 72 Ky. 372 (Ky. 1872)); *see also* Ky. Rev. Stat. § 426.955 ("A [foreign] judgment . . . has the same effect and is subject to the same procedures, defenses and

proceedings for reopening, vacating, or staying as a judgment of a court of this state."). "Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Yeoman v. Com. Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). Among other criteria, claim preclusion is not applicable unless there is an "identity of the two causes of action." *Id.* Thus, as an initial matter, the Court finds that claim preclusion is inapplicable here. The Canadian litigation concerns a claim of trade-dress infringement between Diageo and Heaven Hill, whereas the claim here concerns interpretation of insurance policy exclusions between Heaven Hill and National Trust.

Issue preclusion, on the other hand, prohibits issues that were adjudicated in a previous lawsuit from being relitigated in a subsequent action, regardless of whether the two suits were based on the same cause of action. *Yeoman*, 983 S.W.2d at 465. Issue preclusion may bind a non-party to a previous suit if the Court finds that there exists "an identity of interest" between the non-party and a party to the previous litigation. *State Farm Mut. Auto. Ins. Co. v. Shelton*, 368 S.W.2d 734, 737 (Ky. 1963). Kentucky law establishes five elements that must be satisfied in order for issue preclusion to apply:

> (1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound.

*Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011) (internal quotations omitted); *see also U.S. v. Jimenez*, No. 5:13–CR–00045–TBR–1, 2014 WL 2816018, at *3 (W.D. Ky. June 23, 2014) (applying Kentucky's five-part test for issue preclusion). Furthermore, issue preclusion applies "only if the party against whom it is sought to be applied had a realistically full and fair opportunity to litigate the issue, and if principles of justice and fairness would be

served by its application." *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001) (internal citation omitted).

Elements two through five are easily satisfied here. One of the issues presented in the Canadian litigation was whether Heaven Hill knowingly infringed Diageo's trademarks. At issue here is the knowledge exclusion, which excludes coverage for knowing infringement of another's trade dress. Thus, the issues are the same, and element two is satisfied. Elements three and four are likewise met. "An issue is actually litigated when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *In re Leonard*, No. 15-5452, 2016 WL 1178649, at *4 (6th Cir. Mar. 28, 2016) (internal quotations omitted). In the Canadian litigation, Diageo argued at trial that Heaven Hill knowingly infringed its trade dress. *See Diageo Canada Inc.*, 2017 F.C. 571 at ¶ 84. Thus, the knowledge issue was actually litigated in the underlying litigation. In its opinion, the Canadian court considered the argument and found that Heaven Hill did not act knowingly. *See id*. Thus, the knowledge issue was actually decided. Finally, under Canadian law, Diageo may recover punitive damages only if it shows that Heaven Hill deliberately infringed its trademarks. *Synergism Arithmetically Compounded Inc. v. Parkwood Hills Foodland Inc.*, 2000 CarswellOnt 3030, ¶ 85 (requiring a showing of deliberate and conscious conduct in order to warrant an award of exemplary damages). Thus, the Canadian court's determination regarding Heaven Hill's knowledge was necessary to the court's judgment, as it will help determine the extent of Heaven Hill's liability. *See id.* The determination is also adverse to National Trust because if adopted, it defeats National Trust's argument that the knowledge exclusion bars coverage for damages stemming from the infringement.

The remaining prong asks whether National Trust was "a party in the first case," such that it had a "full and fair opportunity to litigate the issue." *Berrier*, 57 S.W.3d at 281. National Trust was not a named party in the Canadian litigation. Yet as stated above, issue preclusion may be used to bind a non-party where the non-party had an "identity of interest" with the named party, such that the non-party had an "opportunity to be heard on [the] material issue." *State Farm Mut. Auto. Ins. Co.*, 368 S.W.2d at 737. Kentucky courts have found such identity of interest between an insurer and an insured in an underlying tort action against the insured. *See, e.g.*, *Harris v. Jackson*, 192 S.W.3d 297 (Ky. 2006).

Although Kentucky courts have not spoken on the issue directly, a majority of courts have held that where an insurer and insured have a conflict of interest in the underlying litigation, there can be no "identity of interest" and thus collateral estoppel is inapplicable. As an Illinois state court explained:

> A typical situation is when a tort claim is brought against an insured for negligence, but investigation by the insurer leads to the conclusion that the act was intentional and, hence, not within the coverage of the policy. The dilemma of the insurer immediately presents itself: if it defends the action, it may later be precluded from raising the intentional nature of the wrongful act under an estoppel In pais argument; if it refuses to defend the action, which on the face of the complaint is within the policy coverage, it faces the possibility of being subsequently bound by the conclusive nature of the judgment.

*Cowan v. Ins. Co. of N. Am.*, 318 N.E.2d 315, 322 (1974). Numerous other federal and state courts agree with this analysis. *See Blount*, 491 F.3d at 910 ("An inherent conflict of interest prevented [the insurer] from raising its policy defenses in the underlying civil suit while defending the [insured] under a reservation of rights. Thus, [the insured] cannot satisfy . . . collateral estoppel because [the insurer] . . . was not a party and was not in privity with any party to the underlying . . . suit." (internal citation omitted)); *State Farm Fire & Cas. Co. v. Garrity*, 785 F.2d 1225, 1228 (4th Cir. 1986) ("Considerations of judicial efficiency should not be

stretched to bind [the insurer] to the result of a proceeding in which it was not in true privity with its insured and its unique interests were not represented."); *Stanley*, 403 F. Supp. 2d at 644 (finding under Tennessee law "that because [the insurer's and insured's] interests in the [underlying] action were not identical, the general rule of judgment by estoppel applicable to insurers does not apply in the instant action"); *see also Shelter Mut. Ins. Co. v. Vaughn*, 300 P.3d 998, 1004 (Colo. App. 2013) ("[I]ssue preclusion will not bar an insurer from later denying coverage to its insured when the insurer defended the insured under a reservation of rights and the insurer had an interest in establishing a different set of facts than the insured in the underlying litigation."); *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 956 (2003) (holding that prior judgment against insured did not collaterally estop insurer from asserting that the insured's conduct was intentional, where insured's defense was pursuant to a reservation of rights).

In the absence of Kentucky law on an issue, this Court may predict how Kentucky's highest court would rule. *See Rivas v. Doering*, No. 3:01-CV-346-H, 2002 WL 1313127, at *3 (W.D. Ky. May 22, 2002) (finding that in the absence of Kentucky law on a given issue, it is appropriate at times for this Court to predict how Kentucky's highest court would rule). Because issue preclusion is ultimately a rule "of justice and fairness," *Waddell v. Stevenson*, 683 S.W.2d 955, 959 (Ky. Ct. App. 1984), and in light of ample precedent from other jurisdictions, the Court finds it unlikely that the Kentucky Supreme Court would apply collateral estoppel to bar an insurer from litigating an issue raised in underlying litigation in which the insured and insurer had a conflict of interest. This conclusion is supported by the fact that, under Kentucky law, insurers have a strict duty to defend their insureds. *See Eskridge v. Educator & Executive Insurers, Inc.*, 677 S.W.2d 887, 889 (Ky. 1984). It seems improbable that the Kentucky

Supreme Court would force insurers to provide a defense in situations where coverage is debatable, then forbid them from challenging coverage after the underlying litigation concludes. Such an approach would be inconsistent with the principle that "the doctrines of *res judicata* and issue preclusion are based on rules of justice and fairness." *City of Covington v. Bd. of Trs. of Policemen's and Firefighters' Retirement Fund of City of Covington*, 903 S.W.2d 517, 522 (Ky. 1995). Moreover, Kentucky's highest court has held that "the doctrine of res judicata or collateral estoppel should not be applied against the [insurer] [where] (1) the issue . . . was not and could not have been litigated in the original action, (2) there could be no privity based on an identity of interest between the insured and the defendant with respect to th[e] issue [in question], and (3) in justice and fairness the defendant should be permitted to assert this defense. *Shelton*, 368 S.W.2d at 737. Here, although the knowledge issue was litigated in the underlying action, the second and third factors articulated in *Shelton* are present.

Also supporting this conclusion is the fact that Kentucky courts allow an insurer to defend under an express reservation of rights. *See Aetna Cas. & Sur. Co. v. Com. of Ky.*, 179 S.W.3d 830, 841 (Ky. 2005) ("If the insurer believes there is no coverage, it has several options. One is to defend the claim anyway, while preserving by a reservation of rights letter its right to challenge the coverage *at a later date*." (emphasis added)). An insurer's ability to defend under a reservation of rights and challenge the coverage at a later date would effectively be rendered null if courts applied collateral estoppel in this area. In fact, Kentucky courts have applied estoppel only where the insurer breached its duty to defend in the underlying suit and then sought to litigate the coverage issue in a subsequent action. *See Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 523 (Ky. 1987). Accordingly, the Court finds that Kentucky would likely side with the majority of courts that have held that a conflict of interest between an insurer and insured in

underlying litigation precludes the application of collateral estoppel against the insurer in a subsequent proceeding.

Here, in a letter dated April 3, 2014, National Trust notified Heaven Hill that it was accepting the defense of the Canadian litigation subject to a reservation of rights. (D.N. 44-2) Moreover, because of its contractual obligations to Heaven Hill, National Trust could not argue in the Canadian litigation that Heaven Hill acted intentionally. (*See* D.N. 41-1, PageID # 636) Doing so would have subjected Heaven Hill to greater liability and breached National Trust's duty to provide an adequate defense to its insured. Thus, there existed a conflict of interest between Heaven Hill and National Trust in the underlying litigation. It would be inequitable to now bar National Trust from advocating its true position, given that Kentucky's strict duty to defend would have punished National Trust had it declined to defend Heaven Hill in the first place. *See Eskridge*, 677 S.W.2d at 889.

Heaven Hill's final argument to the contrary is unavailing. Heaven Hill contends that "[t]he Sixth Circuit has on multiple occasions reversed declaratory judgments involving insurance coverage disputes when those judgments conflict with state court judgments in the underlying cases." (D.N. 45, PageID # 733 (citing *Bituminous Cas. Corp. v. J & L Lumber, Inc.*, 373 F.3d 807 (6th Cir. 2004); *Am. Home Assur. Co. v. Evans*, 791 F.2d 61 (6th Cir. 1986))) In neither of the cited cases, however, was collateral estoppel at issue. In *Bituminous*, the Sixth Circuit analyzed the propriety of hearing an action for declaratory relief where the relief depended on a fact-based state-law question of employment status. 373 F.3d at 814–15. The court declined to hear the case based on the application of a five-factor test for determining whether to exercise jurisdiction over an action for declaratory relief. *Id*. at 813. The court's opinion primarily focused on the third factor, which asks "whether the use of a declaratory action

would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." *Id.* Likewise, in *American Home*, the court found that exercising jurisdiction over the declaratory-judgment action was inappropriate where there existed multiple "complex factual issues" of state law and the action directly paralleled a state-court action arising from the same facts. 791 F.2d at 64.

Ultimately, Heaven Hill conflates two separate inquiries. One inquiry asks when it is proper for a federal court sitting in diversity to exercise jurisdiction over a matter in which complex issues of state law are prevalent and where there is a state-court action pending. Another inquiry asks when it is proper for a party to litigate an issue in federal court that was previously determined by a foreign court. The situation here is firmly in the latter category. First, the relevant factual question is no longer pending in a parallel proceeding. The Canadian court has made a definitive determination regarding Heaven Hill's knowledge. Second, there is no concern that the Court's ruling here will increase friction between the federal and state systems, since the underlying judgment is from a Canadian court. The Court thus finds that the situation here falls well within the exception to the general rule that insurers are collaterally estopped from relitigating issues determined in an underlying action against the insured. National Trust is therefore not barred from litigating whether Heaven Hill knowingly infringed Diageo's trademarks.

### IV. Whether National Trust May Seek Reimbursement of Its Defense Costs

In its motion for clarification, National Trust asks whether it may pursue reimbursement of its fees and costs expended in the Canadian litigation in the event that this Court finds it had no duty to defend Heaven Hill. (D.N. 41-1, PageID # 643) Heaven Hill also moves for

summary judgment on this issue, arguing that National Trust is barred from seeking reimbursement. (D.N. 44-1, PageID # 685)

In support of its position, National Trust cites *Travelers Property Casualty Co. of America v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257 (6th Cir. 2010). At issue in *Travelers* was whether an insurer may seek reimbursement of settlement for noncovered claims when it funded the settlement under a reservation of rights. *Id.* at 265. Because Kentucky courts had not addressed the issue, the Sixth Circuit predicted that based on several principles of Kentucky contract law, Kentucky would likely allow an insurer to seek reimbursement under these circumstances. *Id.* at 266.

National Trust argues that by extension, Kentucky would also likely allow an insurer to seek reimbursement of defense costs when it defended the insured under a reservation of rights. (D.N. 41-1, PageID # 645) The Court agrees. The principles of Kentucky contract law the *Travelers* court cited in support of its conclusion apply equally to attorney fees and costs. Under Kentucky law, an "insurer has a duty to defend if there is any allegation which potentially, possibility or might come within the coverage of the policy." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). A mistaken good-faith belief that coverage does not extend to the claim will not protect an insurer from having to pay all damages naturally flowing from the insurer's failure to defend. *See Eskridge*, 677 S.W.2d at 889. Given this strict duty to defend, Kentucky courts allow an insurer to defend under an express reservation of rights. *See Aetna Cas. & Sur. Co. v. Com. of Ky.*, 179 S.W.3d 830, 841 (Ky. 2005) ("If the insurer believes there is no coverage, it has several options. One is to defend the claim anyway, while preserving by a reservation of rights letter its right to challenge the coverage at a later date."). Additionally, in accepting an insurer's reservation of rights,

Kentucky courts have on occasion declined to address whether the insured assented to the reservation of rights. *See, e.g.*, *Parsley v. Ky. Farm Bureau Mut. Ins. Co.*, 32 S.W.3d 103, 104 (Ky. Ct. App. 2000).

Taken together, these cases support National Trust's position. Because Kentucky imposes a strict duty to defend on insurers, even for claims plausibly not within a policy's coverage, it is unlikely that Kentucky would also bar an insurer from later seeking to recoup defense costs in the event that a court determines the claim does not fall within the coverage. Additionally, given that Kentucky does not require an insured to expressly assent to a reservation of rights, it is likely that so long as an insurer expressly reserves its right to later seek recoupment of defense costs, it will not be barred from doing so simply because the insured did not assent to the reservation.

This is not to say, however, that every reservation will be sufficient. The Sixth Circuit's decision in *United National Insurance Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir. 2002), is instructive. There, the court predicted that under Ohio contract law, an insurer could seek reimbursement of defense costs pursuant to a reservation of rights. *Id.* at 921. The court reasoned that by accepting the defense offered under a reservation of rights, the insured implicitly agreed that the insurer could later seek reimbursement if it turned out that the insured had no duty to defend. *Id.* at 920. In order for a reservation of rights to pass muster, however, the insurer must "timely and explicitly reserve[] its right to recoup the costs and provide[] specific and adequate notice of the possibility of reimbursement." *Id.* at 921.

Although the court in *SST* analyzed Ohio contract law, this Court has applied *SST Fitness* in a case in which Kentucky law controlled. *See Emp'rs Reinsurance Corp. v. Mut. Ins. Co., Ltd.*, No. 3:05CV556-S, 2006 WL 2734437, at *3–4 ("[A]lthough . . . *SST Fitness* applies Ohio

law, the Sixth Circuit in that case had examined the laws of several jurisdictions before pronouncing that under certain situations an insurer is entitled to reimbursement of its defense costs.").  In applying *SST Fitness*, this Court emphasized that an insurer's reservation of its right to seek defense costs must be explicit.  *Id*. at *4.

The Court concludes pursuant to *Employers Reinsurance* and *SST Fitness*, and in light of applicable Kentucky contract law as applied in *Travelers*, that Kentucky would allow an insurer to seek reimbursement of defense costs pursuant to an explicit, timely reservation of its right to do so.  The remaining issue is whether National Trust provided such a reservation.

In a letter dated April 3, 2014, National Trust notified Heaven Hill that it was accepting the defense of the Canadian litigation subject to a reservation of rights.  (D.N. 44-2)  Nowhere in the letter did National Trust explicitly mention a right to seek reimbursement of defense costs, however.  Under a plain reading of the foregoing caselaw, the letter does not entitle National Trust to recover its defense costs.  In *SST Fitness*, the reservation-of-rights letter at issue specifically stated the insurer's right to seek reimbursement of defense costs.  309 F.3d at 916.  Likewise, in *Travelers*, the reservation-of-rights communication specifically stated that the insurer did not waive its right to later seek reimbursement of proffered settlement funds.  598 F.3d at 263.  National Trust's general statement that it "fully reserve[d] the right to limit or deny coverage to [Heaven Hill] for all of the foregoing reasons" is insufficient under *SST Fitness* and *Travelers*.  (D.N. 44-2, PageID # 702)

Perhaps in recognition of this shortcoming, National Trust cites other "communications" that might serve as an explicit reservation of its right to seek reimbursement.  Neither "communication" passes muster, however.  National Trust first argues that this declaratory-judgment action amounts to explicit notification.  (D.N. 41-1, PageID # 645)  Yet even if a

lawsuit could serve as an explicit reservation of rights, it would not do so where, as here, the complaint fails to explicitly mention reimbursement of fees and defense costs expended in the Canadian litigation. (*See* D.N. 1) The complaint's general prayer for "costs, attorney fees, and expenses" will not suffice, as it is not clear whether that phrase refers to the fees and costs expended in this litigation or the Canadian litigation. (*Id.*, PageID # 17). Finally, National Trust's current motion cannot serve as a reservation of its right to seek reimbursement. While the motion satisfies the explicitness prong of the *SST/Travelers* standard, the motion is not a timely reservation, as it was filed two and a half years after National Trust's initial reservation-of-rights letter and less than five months before the Canadian trial began. (*See* D.N. 41)

In a last-ditch effort to avoid summary judgment, National Trust contends that disposition of the reimbursement issue is premature at this stage. Specifically, National Trust urges that since "there has been no discovery related to any other correspondence or conversations between National Trust and Heaven Hill," there is still a material question of fact regarding whether National Trust provided an explicit reservation of its right to seek reimbursement. (D.N. 58, PageID # 820) In order to avoid summary judgment on the basis of a need for discovery, however, National Trust is required to "state with some precision the materials [it] hopes to obtain with further discovery, and exactly how [it] expects those materials would help [it] in opposing summary judgment." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Bare allegations or vague assertions are not enough. *Id.* Here, National Trust has failed to satisfy this standard. First, National Trust has failed to attach an affidavit or declaration, as required by Rule 56(d). Second, its vague reference to "other correspondence or conversations" does not identify with precision any communications that might contain an explicit reservation of the right to seek reimbursement. Moreover, National Trust would presumably be in possession of any

reservation. The Court will therefore grant Heaven Hill's motion for partial summary judgment as to the issue of National Trust's right to seek reimbursement of defense costs.

## V. Whether Starr May Intervene in the Present Suit

**a. Standards**

Federal Rule of Civil Procedure 24(a) governs when a non-party may intervene as of right. A non-party may intervene if (1) a federal statute provides an unconditional right to intervene; or (2) the non-party claims

> an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Sixth Circuit requires that the intervenor satisfy four elements in order to intervene under Rule 24(a)(2): "(1) the application was timely filed; (2) the applicant possesses a substantial legal interest in the case; (3) the applicant's ability to protect its interest will be impaired without intervention; and (4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011).

Additionally, Rule 24(b) allows for permissive intervention at the Court's discretion if the intervenor is (1) given a conditional right to intervene by a federal statute; or (2) has a claim or defense that shares a common question of law or fact with the main action. When exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

Starr asserts that it is entitled to intervene under Rule 24(a) or, in the alternative, that it should be permitted to intervene under Rule 24(b). As Starr has not pointed the Court to any federal statute giving it an unconditional right to intervene, the Court will first consider whether Starr has satisfied Rule 24(a)(2).

**b. Intervention as of Right Under 24(a)(2)**

<u>1. Timely Filed</u>

When determining whether an application to intervene is timely, the Court considers the following five factors:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). No one factor is dispositive; all relevant circumstances must be taken into consideration. *Blount-Hill*, 636 F.3d at 283. This factor is "a matter within the sound discretion of the [district court]." *U.S. v. City of Detroit*, 712 F.3d 925, 930 (6th Cir. 2013).

The Court finds that Starr's motion to intervene is timely. While it is true that National Trust initiated this action in 2014, there has not been significant progress on the merits due to the stay. Starr seeks to intervene for a proper purpose as well, since it presumably seeks to limit or prevent any potential policy payouts to Heaven Hill. The time between Starr's motion and when its interest matured is also reasonable, as Starr filed its motion less than two months after judgment was entered in the Canadian litigation. (D.N. 61, PageID # 851) If Heaven Hill had prevailed in Canada, then there would be no reason for Starr to intervene to prevent the payout on its policy. Finally, the Court does not conclude that National Trust or Heaven Hill would be prejudiced by Starr's inclusion. Discovery was partially stayed pending final resolution of the Canadian litigation, and as Starr notes, because its policy with Heaven Hill is virtually identical to National Trust's policies, Starr's coverage defenses are the same. (D.N. 29; D.N. 61, PageID

# 858)  With regard to the fifth factor, the Court does not find any unusual circumstances present in this case.

In sum, the Court concludes that Starr's motion was timely filed.

## 2. Legal Interest

The Sixth Circuit has construed what qualifies as a "legal interest" quite broadly.  *See, e.g.*, *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).  There is no specific legal interest required to support intervention.  *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999).  Courts must, however, engage in a fact-specific inquiry to determine whether this element is met.  *Miller*, 103 F.3d at 1245.  Here, Starr's purported legal interest turns on whether it must indemnify Heaven Hill as a result of the Canadian judgment.  When indemnification or a similar issue has arisen in the Sixth Circuit, it has usually involved a contingency—e.g, the duty to indemnify would only be triggered if the insured incurred liability in the principal action.  *See, e.g.*, *State Auto Mut. Ins. Co. v. Frazier's Flooring, Inc.*, No. 3:08-CV-178, 2008 WL 5378073, at *2–3 (E.D. Tenn. Dec. 23, 2008) (discussing *Trinity Universal Ins. Co. v. Turner Funeral Home*, No. 1:02-CV-231, 2003 WL 25269317 (E.D. Tenn. Sept. 18, 2003); *Redland Ins. Co. v. Chillingsworth Venture, Ltd.*, 171 F.R.D. 206 (N.D. Ohio 1997)).  In both *Trinity Universal* and *Redland*, the courts held that the intervening insurance companies did not have substantial legal interests in the actions because of the aforementioned contingency.  *See* 2003 WL 25269317, at *7; 171 F.R.D. at 208.

 Although Heaven Hill has already incurred liability—unlike the insureds in *Trinity Universal* and *Redland*—there is still a major contingency in the Canadian litigation, specifically, the amount of damages Heaven Hill owes to Diageo.  As mentioned above, the Canadian Federal Court bifurcated the proceedings, with one proceeding on liability and one on

damages.  (D.N. 61-4, PageID # 1045)  The Canadian court has yet to reach a finding on damages.  Additionally, as Starr mentions, its excess policies are not activated until National Trust's underlying insurance policy has been exhausted.  (D.N. 61, PageID # 853)  Thus, Starr's involvement in any payout to Diageo is, at this point, merely speculative.  It is quite possible that Heaven Hill's liability will not require it to tap into Starr's excess insurance policies.  Whether it must will be determined by the Canadian court during its damages proceedings.  Therefore, the Court finds that Starr does not have a substantial legal interest in the current proceedings, and as such, it cannot intervene as of right.  Because the Court has determined that Starr does not have a substantial legal interest, it need not consider the third and fourth requirements of Rule 24(a).

**c. Permissive Intervention Under Rule 24(b)**

Permissive intervention under Rule 24(b) is much more expansive than intervention as a right under Rule 24(a).  Once the intervenor has demonstrated that it has a claim or defense that shares a common question of law or fact with the main action, the "district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed."  *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).  The intervention, as with Rule 24(a), must also be timely.  *Miller*, 103 F.3d at 1248.

The Court finds that Starr has met the requirements for permissive intervention under Rule 24(b).  As noted above, Starr's motion to intervene is timely.  There is also a common question of fact: National Trust's and Starr's insurance policies with Heaven Hill are nearly identical, and as such, whether Heaven Hill's conduct puts it outside of its coverage with National Trust is directly relevant to whether its conduct puts it outside its coverage with Starr. (D.N. 61, PageID # 862)  Furthermore, as explained above, because this litigation is still in its

formative phases without a scheduling order, ongoing discovery, or any deadlines, Starr's intervention will not prejudice either National Trust or Heaven Hill. Moreover, neither National Trust nor Heaven Hill opposed Starr's motion to intervene. Therefore, although Starr's intervention is not permitted under Fed. R. Civ. P. 24(a), the Court will allow Starr to intervene under Rule 24(b).

## VI. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     National Trust's motion for clarification (D.N. 41) is **GRANTED** in part and **DENIED** in part. National Trust is not barred from seeking an independent determination as to whether Heaven Hill knowingly infringed Diageo's trademarks. However, National Trust may not seek reimbursement of the defense costs it incurred in the Canadian litigation.

(2)     Heaven Hill's motion for partial summary judgment (D.N. 44) is **GRANTED** in part and **DENIED** in part. National Trust may not seek reimbursement of the defense costs it incurred in the Canadian litigation. However, National Trust is not barred from seeking an independent determination as to whether Heaven Hill knowingly infringed Diageo's trademarks.

 (3)     Starr's motion to intervene (D.N. 61) is **GRANTED**. The Clerk of Court is **DIRECTED** to file Starr's tendered complaint (D.N. 61-1) in the record of this matter.

March 29, 2018

**David J. Hale, Judge**
**United States District Court**